# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| LEROY PAULSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 12-3229-CV-S-BCW-P |
| | ) |
| JEFF NORMAN, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, Leroy Paulson, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on April 16, 2012, seeking to challenge his 2006 convictions and sentences for one count of first degree statutory rape and one count of first degree statutory sodomy, which were entered in the Circuit Court of Taney County, Missouri.

The petition raises five grounds for relief, alleging: (1) ineffective assistance of trial counsel; (2) there was insufficient evidence to convict the petitioner and the verdict was ambiguous; (3) prosecutorial misconduct; (4) the petitioner is actually innocent; and (5) petitioner has been denied due process and equal protection under the law because he has been denied access to evidence by prison officials.

Respondent contends that petitioner's third ground and several claims within the first and second grounds are procedurally barred as they were not presented in state court. (Doc. No. 17, pg 2). Further, respondent argues that petitioner fails to satisfy the two prong test to prevail on a claim of ineffective assistance of counsel, as set forth in Strickland v. Washington, 466 U.S. 668 (1984). Petitioner's remaining claims in ground two, according to respondent, fail to satisfy the requirements to show insufficient evidence as set forth in Jackson v. Virginia, 443 U.S. 307

(1979). Id. at 3. As to petitioner's fourth and fifth grounds for relief, respondent contends they are not cognizable in a habeas corpus action.

## SUMMARY OF THE FACTS

The Missouri Court of Appeals summarized the facts as follows:

> Leroy E. Paulson ("Appellant") was convicted following a bench trial of one count of statutory rape, a violation of section 556.032, and one count of statutory sodomy, a violation of section 566.062. [Fn.1]. Appellant was sentenced to thirty years in the Missouri Department of corrections on each count with the sentences to run concurrently.
>
> > Fn.1 - All statutory references are to RSMo (2000).
>
> Viewing the evidence in a light most favorable to the trial court's verdict, State v. Bewley, 68 S.W.3d 613, 615 (Mo. App. 2002), the record reveals that E.M., who was twelve years old at the time of trial, has resided in a home in Highlandville, Missouri, with K.M. ("Mother") and her three older brothers since 1998. [Fn.2]. E.M. testified at trial that appellant began touching her "wrongfully" when she was about four years old. E.M. testified that while Mother was at work in the evening appellant would force her to engage in sexual acts. E.M. testified that appellant "would touch [her] on [her] vagina [under her clothes with his fingers and the palm of his hand], and he'd make [her] touch him;" Appellant would "rub [her] chest" with his hand under her clothing; Appellant would insert his fingers inside her vagina; Appellant would ejaculate inside and outside of her vagina; Appellant put his penis inside her "butt hole;" and "pretty often" Appellant made her "rub" his penis until he ejaculated. E.M. testified that on one occasion Appellant made her "stick [a penis-shaped dildo] in his butt." E.M. also testified that Appellant "made [her] lick [his ejaculate] off of [her] hands...." She testified that on two occasions Appellant made her "suck on" his penis and when she tried to stop "[h]e'd hit [her] or yell at [her] or force [her] to do it." She stated she felt what he made her do "was nasty."
>
> > Fn.2 - Appellant, who was Mother's boyfriend has resided in the home for a number of years, but mother "kicked [him] out for using drugs" in the fall of 2002.

E.M. also testified that Appellant told her what he was doing to her was "'a good thing, and everybody is doing it, and if [she] didn't do it, [she would] be an outcast and a bad person.'" She related he told her she was already "bad" and that she could not tell anybody about what he was doing to her or he would kill her and her family. According to E.M., Appellant also told her that if she "wasn't acting like such a slut that he wouldn't have done it and if [she] wasn't such a bad girl that he wouldn't do it...." Likewise, appellant told her she "was infected now, and if [she] told anybody it'd...kill [her], the disease." She stated he would often hit her if she refused his advances and he would tell her she was a "bad" and "naughty" girl. Appellant also told her "[t]his is fun for me. It should be fun for you," and that [i]t's an okay thing. It's fun."

Additionally, E.M. testified appellant put needles in her hands and he injected her with substances that made her "feel dizzy and sick and very tired." She stated appellant made her smoke cigarettes "[a]nd one time he had a metal pipe, and he put something in there." She also related that "[w]hen [Appellant] first started making [her] smoke cigarettes, [she] felt dizzy and sick. And then the one time he made [her] smoke [from the metal pipe], [she] didn't] even know what it was, [she] felt sick to [her] stomach. [She] felt dizzy, lightheaded, and tired." She stated that oftentimes when she smoked she saw "odd shapes." E.M. also testified Appellant made her feel "[n]asty and violated and wrong;" "unwanted;" and "dirty." She stated she felt this way because she "didn't want it, and he made [her] do it."

Appellant offered the following evidence at trial. Angela Bounds ("Ms. Bounds"), E.M.'s former school counselor, testified that in November of 2002 E.M. informed Ms. Bounds that in addition to being abused by Appellant she was sexually abused by seven other men. Micki Lane ("Ms. Lane"), a child forensic examiner at the Child Advocacy Center ("the CAC"), testified she interviewed E.M. on videotape on November 27, 2002. [Fn.3]. Ms. Lane stated that when she asked E.M. to identify certain body parts on an anatomical drawing of a male, E.M. drew a tongue and labeled it in her own handwriting. Ms. Lane also testified that in addition to Appellant, E.M. informed her of having been sexually abused by nine other males of varying ages.

> Fn.3 - The trial court ruled the videotape of the CAC interview could not be used in the State's case-in-chief because it lacked "sufficient indicia of reliability;" however, the trial court permitted the

> videotape to be used by appellant for impeachment purposes.

Mother testified she first learned of E.M.'s allegations against Appellant after E.M. discussed the abuse with Ms. Bounds at school. She stated E.M. had previously informed her "the old man that lived across the street" had touched her inappropriately, but Mother stated that E.M. had never before mentioned Appellant having touched her in an inappropriate manner. Mother also testified that E.M. seemed to have a "good, very good" reputation for telling the truth.

Cheryl Gamache ("Ms. Gamache"), a social worker in Christian County, Missouri, testified that she first came in contact with E.M. following E.M.'s disclosure to Ms. Bounds. She testified that she went to the school with Deputy Orville Choate ("Deputy Choate") of the Christian County Sheriff's Department. Ms. Gamache said that during her interview of E.M., E.M. made sexual allegations against "approximately five" people, including Appellant. After talking with E.M. at school, Ms. Gamache and Deputy Choate interviewed Mother. Ms. Gamache states Mother told her E.M. "Watches television and comes up with stories" and "had been kicked out of two Sunday school classes for telling stories and manipulation." She stated Mother "said [E.M.] is very unusual, difficult, and especially challenging."

Deputy Choate testified that during the initial interview conducted with Ms. Gamache at E.M.'s school E.M. made sexual allegations against "approximately eight" people, including Appellant. [Fn.4]. He related that Mother had told him that E.M. "was prone to embellish."

> Fn.4 - At trial, E.M. stated she did not remember telling Ms. Bounds, Ms Gamache, Ms. Lane and Deputy Choate that she had been abused by numerous people.

As already set out, at the close of all the evidence, the trial court found appellant guilty of statutory sodomy and statutory rape. He was sentenced to thirty years in the Missouri Department of Corrections on each count with the sentences to run concurrently. This appeal by Appellant followed.

(Respondent's Exhibit E, pp. 1-5).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND ONE

In ground 1, petitioner alleges several claims of ineffective assistance of trial counsel including: (1) trial counsel had to be instructed by the trial Judge on the proper way to ask questions; (2) trial counsel failed to introduce exculpatory evidence; (3) trial counsel failed to call useful witnesses; (4) failure to call expert witnesses; (5) failure to make a closing statement; (6) failure to investigate; (7) counsel unreasonably advised Movant to waive jury trial; and (8) failure to object to the sentence and judgment. (Doc. No. 7, pg. 5).

In order for petitioner successfully to assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland, 466 U.S. at 687-88. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

First, petitioner alleges that trial counsel failed to act as a reasonable competent attorney by his failure to call Hailey Armstrong and Carrie Breedlove as witnesses.

On appeal from his Rule 29.15 post-conviction relief motion, the Missouri Court of Appeals disposed of these claims as follows:

> In order to prevail on a claim of ineffective assistance of counsel, movant must meet a two-prong standard. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Movant must show that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under the same or similar circumstances and that this deficiency resulted in prejudice to his defense. Id.; *State v. Storey*, 901 S.W.2d 886, 893 (Mo. banc 1995). It is necessary for movant to overcome the strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment and presumption that the challenged action was sound trial strategy. *State v. Kinder*, 942 S.W.2d 313, 335 (Mo. banc 1996), cert. Denied, 118 S.Ct. 149 (1997).
>
> Specifically, to show ineffective assistance for failure to call a witness, movant must show: "1.) trial counsel knew or should have known of the existence of the witness, 2.) the witness could be located through reasonable investigation, 3.) the witness would testify, and 4.) the witness's testimony would have produced a viable defense." Hutchinson v. State, 150 S.W.3d 292, 304 (Mo. banc 2004). "' If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance.'" *Worthington v. State*,

166 S.W.3d 566, 577 (Mo. banc 2005) (quoting State v. Jones, 885 S.W.2d 57, 58 (Mo.App. W.D. 1994)).

### A. Witness Armstrong

Paulson first claims that the trial court clearly erred in finding Paulson's counsel acted as reasonably competent attorneys in not calling Armstrong to testify because Armstrong's testimony would have contradicted and called into question the allegations against Paulson. Paulson argues the testimony should have been offered to show Paulson did not abuse another little girl with whom he had lived. Regarding Armstrong's testimony, the trial court found that even if any of her testimony was admissible, there is no substantial evidence to support her testimony would have changed the outcome of the trial. In reviewing the record, we are not left with a definite and firm impression that a mistake has been made by the motion court in this finding; Armstrong's testimony that Paulson did not sexually abuse her after he left E.M.'s family did not prove Paulson did not sexually abuse E.M. and would have been inadmissible at trial.

Relevant evidence that tends to confirm or refute a fact in issue, or corroborate evidence that is relevant and pertains to the primary issue in the case. *State v. Hawkins*, 328 S.W.3d 799, 809 (Mo.App. S.D. 2010). Here, Armstrong's testimony would have been irrelevant and inadmissible at trial. Armstrong could not testify how Paulson behaved around E.M., and she did not witness any of the events for which Paulson was on trial. Armstrong was only acquainted with Paulson after he stopped living with E.M.'s family and Armstrong had no knowledge of any facts relevant to the case. Evidence that Paulson did not sexually abuse another young girl was inadmissible and counsel was not ineffective for failing to present inadmissible evidence. *See Marschke v. State*, 185 S.W.3d 295, 307 (Mo.App. S.D. 2006) (finding counsel was not ineffective for failing to present testimony from witnesses that they had not seen the defendant behave violently or use firearms in the past because this evidence was irrelevant and inadmissible as it concerned specific acts or conduct by the defendant rather than her reputation in the community for being peaceful or law abiding).

Further, Armstrong's testimony, even if admissible, would not have provided Paulson with a viable defense. Again, Armstrong could only testify to Paulson's behavior toward her, and not E.M. Also, there was no evidence presented at the evidentiary hearing showing Paulson had the same opportunity to abuse Armstrong as he had with E.M.– Mother worked at night and left E.M. in Paulson's care. Thus, Paulson's argument also fails because

Armstrong's testimony does not provide Paulson with a defense, and it would not have changed the outcome of the trial.

Accordingly, the motion court did not clearly err in finding trial counsel's failure to call witness Armstrong did not constitute ineffective assistance of counsel. Paulson's first point is denied.

### B. Witness Breedlove

Next, we determine whether the motion court clearly erred in finding trial counsel was not ineffective in its decision not to call Breedlove as a witness. Paulson specifically alleges Breedlove's testimony would have impeached E.M.'s testimony and, thus, called into question her allegations against Paulson. We disagree.

Paulson's claim fails because he did not present evidence at the evidentiary hearing showing Breedlove was available and willing to testify. Jones testified at the evidentiary hearing she believed she could not locate Breedlove. Breedlove did not testify she was available and willing to testify at Paulson's trial, but only stated if she had been called as a witness at Paulson's trial, she would have testified consistently with her hearing testimony. Breedlove was only asked whether she testified at trial, and she stated she did not. Paulson has the burden of proving his claim by the preponderance of the evidence. *Johnson v. State*, 330 S.W. 3d 132, 137 (Mo.App. W.D. 2010).

Paulson's claim also fails because he had not shown he suffered prejudice as a result of counsel's failure to call Breedlove as a witness. Had Breedlove been called as a witness, she would have testified that E.M.'s reputation for truthfulness was not good and that E.M. lied about "little things." Breedlove would have further testified she had no indication that E.M. lied about Paulson. "'When the testimony of the witness would only impeach the state's witnesses, relief on a claim of ineffective assistance of counsel is not warranted.'" Ferguson v. State, 325 S.W.3d 400, 416-17 (Mo.App. W.D. 2010) (quoting *Whited v. State*, 196 S.W.3d 79, 82 (Mo.App. E.D. 2006)).

Furthermore, Paulson presented substantial evidence at trial to impeach E.M.'s veracity. Ms. Gamache testified Mother told her E.M. "Watched television and comes up with stories" and E.M. was "kicked out of two Sunday school classes for telling stories and manipulation." Ms. Gamache further testified Mother described E.M. as "being a difficult child, and how she liked to be the center of attention." Deputy Choate testified Mother told him E.M. "Was prone to embellish" and Mother was not convinced that

> two of the allegations E.M. made of sexual abuse by persons other than Paulson, had happened. Additionally, multiple witnesses testified E.M. made accusations of sexual abuse against various people; while E.M. denied making such statements.
>
> In light of this evidence already showing E.M. had a reputation for being prone to lying, Paulson cannot show a reasonable probability Breedlove's testimony would have changed the outcome of Paulson's trial. *See Ferguson*, 325 S.W.3d at 416-17 (counsel was not ineffective for failing to call three witnesses to impeach further a state's witness because the witnesses' testimony would have been cumulative to other impeachment evidence and they could not have provided additional facts exculpating the defendant).
>
> Thus, the motion court's finding that trial counsel's failure to call Breedlove was not ineffective assistance of counsel and was not prejudicial is not clearly erroneous. Paulson's second point is denied.
>
> The decision of the motion court is affirmed.

(Respondent's Exhibit J, pp. 6-10).

The resolution of this claim in ground 1 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).[2] Applying the <u>Strickland</u> standard of review to the facts as set forth in the record, the Court finds that plea counsel was not ineffective for not calling Ms. Armstrong or Ms. Breedlove as witnesses.

---

[2] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413, 120 S.Ct. at 1523.

Petitioner raises other factual claims within Ground 1, which respondent correctly maintains are procedurally barred. "A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." Sloan v. Delo, 54 F3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." Id. A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Here, petitioner claims to have received ineffective assistance of counsel because the judge had to advise counsel on how to properly ask questions and because trial counsel failed to: investigate all lines of defense, introduce exculpatory evidence, call expert witnesses, make a closing statement, object to written sentences and judgments, and for unreasonably advising petitioner to waive a jury trial. (Doc. No. 7, pg. 5). None of these claims were argued on appeal from the denial of petitioner's post conviction relief motion. (Respondent's Exhibit H, pp. 14-16).

Petitioner fails to demonstrate the cause or prejudice necessary to overcome a procedural default. However, the Court can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he

must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., (citing Schlup v. Delo, 513 U.S. 298 (1995)). Petitioner fails to make this showing.

Ground 1 will be denied.

## **GROUND TWO**

In Ground 2, petitioner claims that the "effectiveness of the trial court was so poor as to create a manifest injustice." (Doc. No. 7, pg. 6). Within his petition, he argues three points. Id. First, he argues that there was insufficient evidence to prove his guilt beyond a reasonable doubt because the victim's testimony "was so contradictory and against common sense that it could not be relied on without corroboration." (Doc. No. 7-1, pp. 43-44). Likewise, in his third argument, petitioner contends that" the trial court erred in finding [him] guilty of crimes which he did not commit [because] there was absolutely no evidence whatsoever proving or even suggesting (other than the uncorroborated testimony of E.M.) that [he] was guilty." (Doc. No. 7-1, pg. 44).

Review of these claims is extremely deferential to the state courts. Constitutionally sufficient evidence exists to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

On direct appeal, the Missouri Court of Appeals disposed of this claim as follows:

> In his first point on appeal Appellant asserts the trial court erred in denying his motion for judgment of acquittal for both statutory rape and statutory sodomy "because there was insufficient evidence to prove Appellant's guilt beyond a reasonable doubt...." Appellant argues that based on the corroboration rule, E.M.'s "testimony was so contradictory and against reason and common sense that it could not be relied on without corroboration."
>
> "The standard of review in a court-tried criminal case is the same as for a jury-tried criminal case." *State v. Hall*, 201 S.W.3d 599,

602 (Mo.App. 2006) (quoting *State v. Hammons*, 964 S.W.2d 509, 511 (Mo.App. 1998)). "'In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable finder of fact might have found the defendant guilty beyond a reasonable doubt.'" *Bewley*, 68 S.W.3d at 617 (quoting *State v. Pasteur*, 9 S.W.3d 689, 697 (Mo.App. 1999)). "'Substantial or sufficient evidence is that from which the trier of fact could reasonably find the issue in conformity with the verdict.'" Bewley, 68 S.W.3d at 617 (quoting Pasteur, 9 S.W.3d at 697). This Court accepts as true all evidence tending to prove guilt along with all reasonable inferences that support the guilty finding while all contrary evidence and inferences are disregarded. *Hall*, 201 S.W.3d at 603. In applying the standard of review, this Court does not determine the credibility of the witnesses. *State v. Daniels*, 18 S.W.3d 66, 68 (Mo.App. 2000).

It has long been held that "'[t]he uncorroborated testimony of the victim in a case of sexual assault is sufficient to sustain a conviction.'" *State v. Waddell*, 164 S.W.3d 550, 553 (Mo. App. 2005) (quoting *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. Banc. 1992)); *see State v. Sprinkle*, 122 S.W.3d 652, 666 (Mo.App. 2003) (holding that in sexual offense cases "the victim's testimony alone is sufficient to sustain a conviction, even if uncorroborated").

"Corroboration is not required unless 'the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that is validity is thereby rendered doubtful.'" Waddell, 164 S.W.3d at 553 (quoting State v. George, 921 S.W.2d 638, 643 (Mo.App. 1996)). "'The discrepancies must amount to gross inconsistencies and contradictions and must relate directly to an essential element of the case.'" Waddell, 164 S.W.3d at 553 (quoting Sprinkle, 122 S.W.3d at 666). "Furthermore, the corroboration rule is not triggered by inconsistencies between the victim's testimony and the testimony of other witnesses." State v. Paxton, 140 S.W.3d 226, 231 (Mo. App. 2004). As in the destructive contradictions doctrine, the corroboration rule has no application "'to contradictions between the victim's trial testimony and prior out-of-court statements, to contradictions as to collateral matters, or to inconsistencies not sufficient to make the testimony inherently self-destructive.'" State v. Cole, 148 S.W.3d 896, 902 (Mo.App. 2004) (quoting State v. Wright, 998 S.W.2d 78, 81 (Mo.App. 1999)).

Here, Appellant asserts E.M.'s "statements at trial, and to [Ms. Bounds], [Ms. Gamache], [Deputy Choate], [Mother], and [Ms. Lane] contain so many inconsistencies that this Court should find that corroboration is required to sustain appellant's convictions." However, the inconsistencies set out by Appellant relate to E.M.'s out-of-court statements, as recited at trial by appellant's witnesses, that she had been abused by other people *in addition* to Appellant, which is contrary to her trial testimony that only Appellant had abused her. "Conflict between the testimony of the victim and other witnesses does not require application of the corroboration rule." Sladek, 835 S.W.2d at 310; see Waddell, 164 S.W.3d at 553.

The majority of the inconsistency between E.M.'s trial testimony, her out-of-court statements, and the testimony of other witnesses relates to the collateral issue of whether she was abused by other people in addition to Appellant. However, any other sexual abuse which might have occurred at the hands of someone other than Appellant did not *per se* "'relate directly to an essential element of the case'" against appellant. Sprinkle, 122 S.W.3d at 667 (quoting State v. Greenwood, 965 S.W.2d 852, 856 (Mo.App. 1998)). "Where the victim's statements have been inconsistent in collateral matters, no cloud of doubt is created and no corroboration is necessary.'" Waddell, 164 S.W.3d at 554 (quoting State v. Griggs, 999 S.W.2d 235, 242 (Mo.App. 1998)); see State v. Baldwin, 571 S.W.2d 236, 239 (Mo. banc 1978). Any "contradictions between a witness's trial testimony and any previous testimony or statements are for the trier of fact to reconcile and consider when judging the witness's credibility.'" Waddell, 164 S.W.3d at 553 (quoting Paxton, 140 S.W.3d at 230).

Furthermore, the primary inconsistency between E.M.'s trial testimony and her out-of-court statements which related to the crime of sodomy was the fact that at the section 491.075 hearing E.M. testified no one had ever touched her breasts, and at trial she stated Appellant *had* touched her breasts. Throughout this matter E.M. consistently reported Appellant had sexually abused her and her recitation of the facts changed only as to the amount of detail in her accounts of the incidents with Appellant. As set out in Sprinkle, 122 S.W.3d at 667, "the testimony of young victims about sensitive matters commonly contains some variations, contradictions, or lapses in memory."

Section 566.032.1 sets out that "[a] person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old." Section

566.010(4) defines sexual intercourse as "any penetration, however slight, of the female sex organ, whether or not an emission results."

E.M. testified at trial that during an approximate two year period of time Appellant would often "stick [his penis] inside [her] vagina." Further, she testified that Appellant would ejaculate inside and outside of her vagina. [Fn. 5]. Based on the foregoing there existed sufficient evidence from which the trial court could have found appellant guilty beyond a reasonable doubt of the crime of statutory rape, as proscribed in section 566.032.1.

> Fn.5 - E.M. also told Ms. Lane at the CAC interview that Appellant put his penis inside her vagina "a lot."

As for appellant's conviction for statutory sodomy, section 566.062.1 sets out that "[a] person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." "Deviate sexual intercourse" is defined in section 566.010(1) as

> any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

E.M. testified at trial that Appellant "would touch [her] on [her] vagina..." with his fingers and the palm of his hand; Appellant would insert his fingers inside her vagina; Appellant would ejaculate outside of her vagina' Appellant put his penis inside her "butt" hole;" "pretty often" Appellant made her "rub" his penis until he ejaculated; and Appellant made her "suck on" his penis." [Fn.6]. Based on the foregoing, there was sufficient evidence upon which the trial court could have found Appellant guilty beyond a reasonable doubt of statutory sodomy per section 566.062.1. Appellant's Point One is denied.

> Fn.6 - E.M. told Ms. Lane at the CAC interview that Appellant touched the inside and outside of her vagina with his hands, fingers, and tongue; Appellant forced her to touch his penis with her hands and mouth; Appellant stuck his penis and fingers "in the hole" in her buttocks on three

>           occasions; Appellant put his penis inside her
>           vagina; and Appellant would "make [her] drink..."
>           the "white little gummy stuff" that came out of his
>           penis.

(Respondent's Exhibit E, pp. 6-10).

Further, in his second claim under Ground Two, petitioner argues that the trial court erred in finding him "guilty beyond a reasonable doubt as charged because such a finding fails to protect him from double jeopardy and is ambiguous. (Doc. No. 7-1, pg. 44). The respondent contends that there were no objections made to the verdict when it was entered, thus, the Missouri Court of Appeals for the Southern District was correct when it found that petitioner failed to preserve these claims. (Doc. No. 17, pg. 17).

On direct appeal, the Missouri Court of Appeals disposed of this claim as follows:

> Appellant's second point relied on asserts "[t]he trial court erred in finding Appellant 'guilty beyond a reasonable doubt as charged' because such a finding is ambiguous and fails to protect Appellant from double jeopardy...." Specifically, he argues that because the trial court failed to state which particular act or events it considered in finding Appellant guilty beyond a reasonable doubt of the crime of statutory sodomy, the trial court's verdict left Appellant open for future prosecution for the same acts of events. [Fn. 7].
>
> Appellant concedes that he did not properly preserve this point for appellate review and , therefore, requests plain error review under Rule 30.20. [Fn.8]. Plain error review is used sparingly and is limited to those cases where there is clear demonstration of manifest injustice or miscarriage of justice. *See State v. Ballard*, 6 S.W.3d 210, 214 (Mo.App. 1999). Claims of plain error are reviewed "under a two-pronged standard." *State v. Roper*, 136 S.W.3d 891, 900 (Mo. App. 2004). "In the first prong, we determined whether there is, indeed, plain error, which is error that is 'evident, obvious, and clear.'" *Id*. (quoting *State v. Scurlock*, 998 S.W.2d 578 586 (Mo.App. 1999)). "If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." *Id*. "A criminal defendant seeking plain error review bears the burden of showing that plain error occurred and that it

resulted in a manifest injustice or miscarriage of justice." *Id*. "The outcome of plain error review depends heavily on the specific facts and circumstances of each case." *Id*.

In support of his assertion that we should review this point for plain error, Appellant cites to *State v. Lue*, 594 S.W.2d 351, 354 (Mo.App. 1980). In *Lue*, a jury-tried case, although "it was not intended to charge defendant with two offenses ...the information and the instructions potentially support[ed] two offenses." *Id*. The jury's "verdict merely found the defendant 'guilty.'" *Id*. at 353. Accordingly, there was "confusion ... because it [wa]s not clear of what crime defendant ha[d] been convicted." Id. The appellate court found the charging information was defective, although the issue was not specifically raised by the defendant in his points relied on and granted plain error review. *Id*. at 353-54. The *Lue* court determined that a "verdict must be sufficiently definite and certain so that upon the entry of a judgment thereon it would constitute a bar to a further prosecution for the same offense" and that the verdict in *Lue* was "ambiguous." *Lue*, 594 S.W.2d at 354. The court remanded the case to the trial court and ordered that "[o]n a retrial, the information should be amended by identifying the section under which defendant is being charged, and the instructions and form of verdict should be redrafted so as to clearly specify that offense." *Id*.

The situation in the present matter is not the least bit similar to that found in *Lue*. In the instant matter, Appellant was charged with two crimes and the trial court convicted him of two crimes. This Court fails to see how a verdict in that situation can be ambiguous as Appellant maintains.

Furthermore, as relates to the charging information for statutory sodomy, Count II sets out that "on or between the 1st of October, 1998, and the 30th day of November, 2000, in the County of Christian, State of Missouri, [Appellant] had deviate sexual intercourse with E.M., who was less than twelve years old." Evidence was adduced at trial that between those dates Appellant continually sodomized E.M. [Fn. 9]. It is our view that the charging information was not defective in that it listed the statutory section under which Appellant was charged and set out sufficient allegations to charge him with the crime of statutory sodomy. We also observe that this matter was tried before the trial court and not a jury, such that there could be a minimal likelihood of confusion regarding jury instructions or the offenses for which he was convicted.

> Further, we note Appellant and his counsel were present at the time the verdict was rendered in open court and at the sentencing hearing. Appellant had every opportunity to ask the trial court for clarification of the verdict at either of the aforementioned court appearances and he failed to do so. See *State v. Wolfe*, 103 S.W.3d 915, 917-18 (Mo.App. 2003) (holding there was no manifest injustice where the trial court entered a docket entry of guilty as opposed to announcing the verdict in open court because the defendant was present at sentencing and "[t]he trial court told the defendant of its verdict and gave him an opportunity to ask any questions or make any objections").
>
> Appellant has failed to prove the trial court committed "'error that is evident, obvious, and clear.'" Roper, 136 S.W.3d at 900 (quoting *Scurlock*, 998 S.W.2d at 586). Accordingly, we deny plain error review. Point Two is denied.
>
> The judgment and sentence of the trial court is affirmed.

(Respondent's Exhibit E, pp. 11-13).

The resolution of Ground 2 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).

Ground 2 is denied.

## **GROUND 3**

In his third ground, Petitioner claims prosecutorial misconduct. (Doc. No. 7, pg. 8). Specifically, he asserts that he was the victim of selective prosecution because out of the eleven people accused by the victim, he was the only person that was investigated and ultimately charged. (Doc. No. 7-1, pp. 46-47). He also alleges that the questioning of a witness who was thought to have been sexually assaulted by him, led the court to believe that he is a sexual

predator, which was an admission of "untried bad acts" and resulted in prosecutorial misconduct. (Doc. No. 7-1, pp. 47-48). However, Petitioner failed to raise Ground 3 either on direct appeal or in his post-conviction relief motion. Consequently, this ground for relief is procedurally defaulted and may not be reviewed by the Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Even though petitioner has failed to demonstrate cause (and, therefore, we do not consider prejudice) for his procedural default, the Court can still reach the merits of his claims if he can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence . . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. (citing Schlup v. Delo, 513 U.S. 298 (1995)). Review of the record reflects that petitioner has failed to satisfy this test.

Petitioner has failed to show cause for and prejudice from the default of Ground 3. He also has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of Ground 3 is not required to prevent a fundamental miscarriage of justice. Murray v. Carrier, 477 U.S. at 495.

Ground 3 will be denied.

## GROUND 4

In Ground 4, petitioner asserts a claim of actual innocence based on newly discovered evidence. (Doc. No. 7, pg. 9). Petitioner argues that a letter that was obtained after trial, written by a doctor in reference to conversations he had with the victim where she claimed to have had sexual contact with the petitioner while he was in jail. (Doc. No. 7-1, pg. 49). Petitioner has relied on this letter, but has yet to produce it.

The respondent correctly asserts that the petitioner's claim of actual innocence is not a cognizable federal habeas corpus ground for relief. (Doc. No. 17, pg. 22) (citing Herrera v. Collins, 506 U.S. 390, 400 (1993). A freestanding claim of actual innocence cannot, in itself, provide habeas relief. See Herrera v. Collins, 506 U.S. 390, 400 (1993) ("This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact."). "Federal courts are not forums in which to relitigate state trials [or guilty pleas]," Barefoot v. Estelle, 463 U.S. 880, 887 (1983), and, therefore, petitioner must present an independent constitutional violation other than his innocence to be afforded habeas relief.

Ground 4 will be denied.

## GROUND 5

In his fifth ground, petitioner asserts that he is being denied due process and equal protection under the law. (Doc. No. 7-1, pp. 50-51). Specifically, he claims that prison officials have not permitted him to view a copy of a DVD which contains an interview of the victim with the Child Advocacy Center. Id. Due to the denial of this exculpatory evidence, petitioner believes he should be released immediately. However, as respondent correctly states, this claim is not cognizable on federal habeas review. Rather, petitioner must show "an independent

constitutional violation occurring in the underlying state criminal proceeding" in order to obtain habeas relief. Burton v. Dormire, 295 F.3d 839, 848 (8th Cir. 2002). Here, petitioner has failed to make such a showing.

Ground 5 will be denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

/s/ Brian C. Wimes
BRIAN C. WIMES
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated  May 10, 2013.